# United States Court of Appeals for the Federal Circuit

---

**SECURED MAIL SOLUTIONS LLC,**
*Plaintiff-Appellant*

**v.**

**UNIVERSAL WILDE, INC.,**
*Defendant-Appellee*

---

2016-1728

---

Appeal from the United States District Court for the Central District of California in No. 2:15-cv-07562-DOC-GJS, Judge David O. Carter.

---

Decided: October 16, 2017

---

WILLIAM J. O'BRIEN, One LLP, Beverly Hills, CA, argued for plaintiff-appellant.

GREGORY H. LANTIER, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Washington, DC, argued for defendant-appellee. Also represented by ROBERT MANHAS.

---

Before PROST, *Chief Judge,* CLEVENGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Secured Mail Solutions LLC appeals from the United States District Court for the Central District of California's grant of a motion to dismiss on grounds that the claims of seven asserted patents are directed to subject matter ineligible for patenting under 35 U.S.C. § 101. Because the claims of the asserted patents are directed to an abstract idea and the claims contain no additional elements that transform the nature of the claims into a patent-eligible application of the abstract idea, we *affirm*.

BACKGROUND

This appeal involves seven patents that Secured Mail groups into three categories. U.S. Patent Nos. 7,814,032, 7,818,268, and 8,073,787 are the "Intelligent Mail Barcode" patents. U.S. Patent Nos. 8,260,629 and 8,429,093 are the "QR Code" patents. U.S. Patent Nos. 8,910,860 and 9,105,002 are the "Personalized URL" patents.

All the patents involve methods whereby a sender affixes an identifier on the outer surface of a mail object (e.g. envelope or package) before the mail object is sent. Computers and networks are used to communicate the information about the mail object's contents and its sender after the mail object is delivered.

The Intelligent Mail Barcode patents recite a method for verifying the authenticity of the mail object. The identifier or barcode is a single set of encoded data that is generated by concatenating a sender-assigned unique identifier with sender data, recipient data, and shipping method data. '268 patent, J.A. 76–77. The barcode is affixed to the outside of the mail object and an authenticating portion of the barcode is stored in a database. The recipient of the mail object can access the database and use that authenticating portion to verify that a mail object is authentic.

The QR Code and Personalized URL patents additionally require that a reception device (e.g., personal

computer) be used to scan the encoded data and display the resulting data on the reception device's display screen. *See, e.g.*, '629 patent, J.A. 98; '093 patent, J.A. 107; '860 patent, J.A. 120. In the QR Code patents, the identifier is a QR code (two-dimensional barcode) which a user can scan to look up additional electronic information related to the mail object. Specifically, the barcode includes data that allows the recipient of the mail object to request data directly from the sender and allows the sender to provide personalized data directly to the recipient, without the involvement of the mail carrier. For example, a customer might scan the QR code and be directed straight to her account rather than having to log in to access the account.

In the Personalized URL patents, a method similar to the QR Code patents is used, except the identifier is a personalized network address, or URL. For example, the user can type the URL into her web browser and be directed straight to a specific account, or to other personalized information. The types of data provided by the sender include content information, warranty information, and account information.

For the Intelligent Mail Barcode patents, claim 1 of the '268 patent is representative:

> 1. A method of verifying mail identification data, comprising:
>
> affixing mail identification data to at least one mail object, said mail identification data comprising a single set of encoded data that includes at least a unique identifier, sender data, recipient data and shipping method data, wherein said unique identifier consists of a numeric value assigned by a sender of said at least one mail object;
>
> storing at least a verifying portion of said mail identification data;

receiving by a computer at least an authenticating portion of said mail identification data from at least one reception device via a network, wherein said authenticating portion of said mail identification data comprises at least said sender data and said shipping method data; and

providing by said computer mail verification data via said network when said authenticating portion of said mail identification data corresponds with said verifying portion of said mail identification data.

J.A. 76 at col. 6 ll. 18–37.

For the QR Code patents, claim 1 of the '093 patent is representative:

1. A method for providing electronic data to a recipient of a mail object, comprising:

Generating, by a processor, a barcode for a mail object, said barcode including at least a first set of mail data, said first set of mail data including data corresponding to said recipient of said mail object;

affixing said barcode to said mail object;

submitting said mail object to a mail carrier for delivery to said recipient of said mail object;

receiving said first set of mail data, including data corresponding to said recipient of said mail object, from a reception device of said recipient via a network;

providing said electronic data to said reception device via said network in response to receiving said first set of mail data, said electronic data including a content of said mail object;

wherein said reception device displays said electronic data to a recipient of said mail object by displaying said electronic data on a screen of said reception device.

J.A. 107 at col. 6 ll. 22–40.

For the Personalized URL patents, claim 1 of the '860 patent is representative:

1. A method for providing electronic data to a recipient of a mail object, comprising:

using an output device to affix a single set of mail ID data to said mail object, said single set of mail ID data including at least recipient data, said recipient data comprising a personalized network address associated with said recipient of said mail object;

submitting said mail object to a mail carrier for delivery to said recipient of said mail object;

receiving said recipient data from a reception device of said recipient via a network; and

providing by at least one processor said electronic data to said reception device via said network in response to receiving said recipient data, said electronic data including data on a content of said mail object;

wherein said reception device displays said electronic data to a recipient of said mail object by displaying said electronic data on a screen of said reception device.

J.A. 120 at col. 6 ll. 34–51.

Universal moved to dismiss Secured Mail's complaint under Fed. R. Civ. P. 12(b)(6), arguing that Secured Mail's patents were not patent-eligible under Section 101. On February 16, 2016, the district court found that all seven

patents were directed to patent-ineligible subject matter. It reasoned that "the asserted claims, viewed individually or in combination, do not meaningfully limit the abstract idea of communicating information about a mailpiece by use of marking." *Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1058 (C.D. Cal. 2016).

Secured Mail appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

STANDARD OF REVIEW

We review procedural questions that are not unique to patent law, such as a grant of a motion to dismiss for failure to state a claim, according to the law of the regional circuit, which in this case is the Ninth Circuit. *See, e.g.*, *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1319 (Fed. Cir. 2013). The Ninth Circuit reviews de novo a dismissal for failure to state a claim. *See, e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). This court also reviews a district court's determination of patent eligibility under 35 U.S.C. § 101 de novo. *See, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1311 (Fed. Cir. 2016).

DISCUSSION

The Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The courts have created certain exceptions to the literal scope of § 101, determining that laws of nature, natural phenomena, and abstract ideas are not patent-eligible. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).

In *Alice*, the Supreme Court applied a two-step framework for analyzing whether claims are patent-

eligible under section 101. First, we determine whether the claims at issue are "directed to" a judicial exception, such as an abstract idea. 134 S. Ct. at 2355. If not, the inquiry ends. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). If the claims are determined to be directed to an abstract idea we next consider under step two whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355.

### 1. *Alice* Step One

Under *Alice* step one we consider the claims in their entirety to ascertain whether they are directed to ineligible subject matter. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). We look to whether the claims "focus on a specific means or method[, . . .] or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *McRO*, 837 F.3d at 1314 (citation omitted).

The district court found that the claims of all seven of the asserted patents "are directed to the abstract idea of communicating information about a [mail object] by use of a marking." *Secured Mail*, 169 F. Supp. 3d at 1049.

On appeal, Secured Mail argues that its claims are patent-eligible under *Enfish,* an opinion issued after the district court's decision in this case. In particular, the district court quoted the since-reversed district court decision in *Enfish* to hold that courts "should recite a claim's purpose at a reasonably high level of generality." *Secure Mail*, 169 F. Supp. 3d at 1048 (quoting *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Cal. 2014), *rev'd*, 822 F.3d 1327 (Fed. Cir. 2016)). The Federal Circuit in *Enfish* held that the district court had described the claims at too high a level of abstraction, and

"describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." 822 F.3d at 1337. Here, despite the district court's statement that "a reasonably high level of generality" should be used, the district court's analysis correctly found that Secured Mail's claims are directed to an abstract idea.

The court in *Enfish* held the claims relating to a computer database implementation to be patent-eligible under *Alice* step one because the claims focused on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity. *Id.* at 1332–33. The claims in *Enfish* related to organization of data in a table in computer memory and a system for indexing that data. *Id.* at 1332–332. In contrast, the claims of Secured Mail's patents are not directed to an improvement in computer functionality. For example, the claims are not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality.

Secured Mail argues that the claims are specifically directed to a sender-generated unique identifier, which improved on the existing process both by reliably identifying the sender of the mail object and by permitting the sender to create a bi-directional communication channel between the sender and recipient of the mail object. The fact that an identifier can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.

The claims of the Intelligent Mail Barcode patents are not directed to specific details of the barcode or the equipment for generating and processing it. The claims generically provide for the encoding of various data onto a mail object but do not set out how this is to be performed. The claims state that various identifiers are affixed to a

mail object, stored in a database, scanned from the mail object, and retrieved from the database. No special rules or details of the computers, databases, printers, or scanners are recited. *Cf. McRO*, 837 F.3d at 1315 (finding patent eligibility where the "claimed process uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results"); *Thales*, 850 F.3d at 1349 (finding patent eligibility where the "claims specify a particular configuration of inertial sensors and a particular method of using the raw data from the sensors").

There is no description of how the unique identifier is generated or how a unique identifier is different from a personal name, or return address. Rather, the claim language cited by Secured Mail merely recites that the unique identifier is generated by the sender. The fact that the sender generates a barcode, which itself is not claimed, does not render the idea any less abstract.

The QR Code patents fare no better. The claims of these patents provide a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system. Then, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device. This method is not limited to any particular technology of generating, printing, or scanning a barcode, of sending a mail object, or of sending the recipient-specific information over a network. Rather, each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking.

The Personalized URL patents are directed to the same abstract idea. The claims recite a personalized network address that is affixed to a mail object using an output device, the mail object is submitted to a mail carrier, and then once the mail object is received, a re-

quest is made by the recipient over the network using the personalized network address, and data is displayed on a screen. As with the other patents, each step of the process uses an identifier, in this case a personalized network address, to communicate information about a mail object.

The claims of the three sets of patents are not limited by rules or steps that establish how the focus of the methods is achieved. Instead, the claims embrace the abstract idea of using a marking affixed to the outside of a mail object to communicate information about the mail object, i.e., the sender, recipient, and contents of the mail object. Because the claims are directed to an abstract idea, we turn to the second step of the *Alice* inquiry.

## 2. *Alice* Step Two

In step two, we consider the elements of the claims to determine whether they transform the nature of the claim into a patent-eligible application of the abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). This is the search for an inventive concept, which is something sufficient to ensure that the claim amounts to significantly more than the abstract idea itself. *Id.* "To save a patent at step two, an inventive concept must be evident in the claims." *Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Merely reciting the use of a generic computer or adding the words "apply it with a computer" cannot convert a patent-ineligible abstract idea into a patent-eligible invention. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015) (citing *Alice*, 134 S. Ct. at 2358).

Secured Mail argues that the district court misunderstood the step two analysis, and instead of searching for an inventive concept, it only asked whether the "underlying" technology was conventional. We disagree. The district court decision has pages analyzing the individual

claim elements concluding that the claims are "replete" with routine steps, including "affixing mail identification data," such as a barcode, to a mail object or "submitting a mail object to a mail carrier for delivery." *Secure Mail*, 169 F. Supp. 3d at 1051. The district court focused on the sender-generated barcode because Secured Mail argued that the sender-generated barcode was the inventive concept. The district court is correct to search for an inventive concept in precisely the factors that Secured Mail argues comprises the inventive concept. The district court addressed Secured Mail's argument that "the development of a unique, sender-generated identifier *is* the critical invention." *Id.* at 1052.

In the Intelligent Mail Barcode patents, the sender-generated identifier is created by combining various pieces of data, such as a unique identifier, sender data, recipient data and shipping method data. The data need not even be in the form of a barcode, much less a specific new type of barcode. The claim language does not explain how the sender generates the information, only that the information itself is unique or new. The claim language does not provide any specific showing of what is inventive about the identifier or about the technology used to generate and process it. The district court is correct that the sender-generated identifier is not a sufficiently inventive concept. *Id.* at 1051–53.

For the QR Code and Personalized URL patents, the district court concluded that there was no inventive concept. We agree. The claims merely provide that an identifier is affixed to a mail object that is used by the recipient to request and display electronic information. The use of barcodes was commonplace and conventional in 2001. *See, e.g.*, '860 patent, J.A. 112–114 (citing references prior to 2001 regarding use of barcodes); *see also* '032 patent, J.A. 65 at col. 3 ll. 28–34, col. 4 ll. 65–67 (noting that barcode scanners were generally known to those skilled in the art). In addition, sending a personal-

ized URL to a recipient was not an unconventional use of the Internet in 2001, for example, in emails that contained a personalized response URL. Nor is the "bi-directional communication line" inventive; the idea of responding to or inquiring about mail using a personalized identifier through the use of a marking (such as an account number printed on a utility bill, or a check number printed on a check) has long been a conventional concept.

Secured Mail analogizes to *DDR Holdings, LLC v. Hotels.com, L.P.*, which held claims that "specify how interactions with the Internet are manipulated to yield a desired result" and recite "a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet" are patent-eligible under section 101. 773 F.3d 1245, 1258–59 (Fed. Cir. 2014). The claims in Secured Mail's patents are non-specific and lack technical detail. Rather than citing a specific way to solve a specific problem as in *DDR*, the asserted claims cite well known and conventional ways to allow generic communication between a sender and recipient using generic computer technology.

The fact that many of these technologies were well-known can be discerned from Secured Mail's patents themselves. The patents mention that the invention can be performed using many types of hardware, including "personal computers, set top boxes, personal digital assistances (PDAs), mobile phones, land-line phones, televisions, bar code readers, and all other physically and wirelessly connected reception devices generally known to those skilled in the art," suggesting that the hardware used is conventional. '032 patent, J.A. 65 at col. 3 ll. 29–34. The "Background of the Invention" section notes that contents that can be delivered electronically are often included in mail objects that are delivered via traditional mail services. '032 patent, J.A. 64 at col. 1 ll. 50–52.

Some of the claim elements, such as submitting a mail object to a mail carrier or affixing information to a mail object, are routine to persons that have mailed a letter.

We see no inventive concept that transforms the nature of the claims into a patent-eligible application of the abstract idea.

Secured Mail argues that because the district court's conclusions address questions of fact, it was inappropriate for the district court to dismiss the case via Rule 12(b)(6). Yet, this court has determined claims to be patent-ineligible at the motion to dismiss stage based on intrinsic evidence from the specification without need for "extraneous fact finding outside the record." *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–14 (Fed. Cir. 2016); *Content Extraction*, 776 F.3d at 1349; *cf. OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (holding that a Section 101 inquiry is a question of law).

Secured Mail also argues that the district court erroneously shifted the burden of proof on the question of whether more than just industry-standard technology is claimed. According to Secured Mail, the district court improperly required it to prove that affixing a URL or barcode to a mail object was unconventional. Secured Mail's argument is misplaced. In ruling on a 12(b)(6) motion, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," such as the claims and the patent specification. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Here, the district court did not place any special burden of proof on Secured Mail, but simply concluded from the claims that they were directed to patent-ineligible subject matter.

CONCLUSION

For the foregoing reasons, we *affirm* the district court's grant of Universal's motion to dismiss.

**AFFIRMED**

COSTS

No costs.