NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE:  KENTON ABEL,**
*Appellant*

---

2020-1611

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 13/049,873.

---

Decided:  January 7, 2021

---

ROBERT FISH, Fish IP Law, LLP, Irvine, CA, for appellant.  Also represented by JENNIFER SHIH.

SARAH E. CRAVEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu.  Also represented by THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Kenton Abel is the named inventor on U.S. Patent Application No. 13/049,873, titled "System and Method of Generating Mailers from Online Interactions."  The examiner rejected pending claims 1–3 of the '873 application as

claiming subject matter ineligible for patenting under 35 U.S.C. § 101.  The Patent Trial and Appeal Board affirmed the examiner's § 101 rejections.  We affirm the Board's decision.

I

A

The '873 application describes generating a mailer, or "a physical document," that "allows for a user to send and receive physical letters and/or goods to another user without divulging personal information."  J.A. 47–48.  The application describes a computer system to receive electronic communications from users and a database within the system to store users' personal information, including their mailing addresses and permissions to receive mail and to share personal information.  J.A. 55.  Upon receiving a request to send a mailer, the system can create and deliver the mailer based on the intended recipient's permissions. J.A. 48, 50.  The sender need not know the recipient's physical address; nor will the system reveal the recipient's personal information to the sender unless the recipient has given permission.  *See*, *e.g.*, J.A. 50–53.

Claim 1 is the only independent claim in the '873 application:

1. A method for generating a mailer, comprising:

   a) a system comprising a computer open to receiving electronic communications from a plurality of sending users and a plurality of receiving users,

   b) a database within the system for storing personal information of each of the plurality of receiving users, wherein the personal information comprises a physical mailing address,

   c) receiving an electronic communication from a sending user for initiating a mailer demand for a receiving user,

       d) performing in any order, using the computer system:

           i) sending user inputting sufficient information to uniquely identify a receiving user;

           ii) checking for permissions in the database for the initiated mailer demand to use the receiving user's physical mailing address;

           iii) sending user inputting sufficient information to generate a mailer;

       e) combining sending user's information with receiving user's physical mailing address to form a completed mailer demand,

       f) physically generating the mailer according to the mailer demand,

       g) physically delivering the mailer to a postal authority with sufficient postage for delivery of the mailer to the receiving user,

       wherein each receiving user controls one or more permissions for each sending user to utilize the receiving user's personal information prior to the sending user initiating the mailer demand,

       wherein the sending user is not notified of the receiving user's personal information to which the sending user has not been given permission by the receiving user.

J.A. 3–4; *see also* J.A. 285.

## B

    On June 1, 2016, the examiner issued a final rejection of claims 1–3 for claiming patent-ineligible subject matter. J.A. 200–02. Applying the framework of *Alice Corp. Pty.*

*Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the examiner first determined that the claims are directed to the abstract idea of generating a mailer, which is a fundamental economic practice, a method of organizing human activities, or both. J.A. 209–10. The examiner then determined that the claim limitations do not include "significantly more" than the abstract idea itself because they simply involve instructions to implement the idea on a computer and recite generic computer structure to perform generic computer functions. J.A. 214.

On appeal, the Board affirmed the examiner's § 101 rejection. *Ex parte Abel*, Appeal 2018-002666, 2020 WL 969176, at *2–6 (P.T.A.B. Feb. 25, 2020).[1] The Board stated that "claim 1 recites an abstract idea and describes generating a mailer defined by a set of rules for controlling the sender's access to the receiver's mailing address." *Id.* at *3 (cleaned up). The Board added that the claim's limitations are properly characterized as "methods of organizing human activity" and "mental processes," *id.* at *3–4 (cleaned up), and that the claim's limitations do not integrate the abstract idea into a practical application, *id.* at *4–5. The Board rejected Mr. Abel's argument that the claims are not directed to an abstract idea because they are "narrow in scope" and "particularly directed to certain operations that can only occur on computer systems." *Id.* at *4 (quoting J.A. 278, 280). The Board reviewed the claim limitations and concluded that they all are part of the abstract idea, add insignificant post-solution activity, or merely "recite 'conventional steps for generating a mailer (postcard).'" *Id.* at *5 (quoting J.A. 214 and citing J.A. 47–

---

[1]    The examiner had also rejected the pending claims under 35 U.S.C. § 103(a), but the Board found the examiner's obviousness reasoning inadequate and did not sustain the examiner's obviousness conclusion. *Ex parte Abel*, 2020 WL 969176, at *6.

49). Therefore, the Board affirmed the examiner's rejection of claim 1 under § 101, as well as the rejection of dependent claims 2–3, for which Mr. Abel presented no arguments separate from those made for claim 1. *Id.* at *6.

Mr. Abel timely appealed the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(a).

## II

On appeal, Mr. Abel argues that the claims of the '873 application are not directed to an abstract idea and, in any event, include inventive concepts. Subject-matter eligibility under § 101 is a question of law based on underlying facts. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1124–25 (Fed. Cir. 2018). We review the Board's legal conclusions de novo and any required fact finding for substantial evidence. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362 (Fed. Cir. 2020).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (internal quotation marks omitted). "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (internal quotation marks omitted).

A

Under the first step of the *Alice* framework, claims 1–3 of the '873 application are directed to the abstract idea of "generating a mailer defined by a set of rules for controlling the sender's access to the receiver's mailing address," which is a method of organizing human activity. *Ex parte Abel*, 2020 WL 969176, at *3 (cleaned up).

The purported advance recited in claim 1 of the '873 application is to communicate information electronically while protecting the recipient's address from involuntary disclosure to the sender. J.A. 285. The focus is on using a generic computer as a tool to perform a communication practice—giving a message to an intermediary who, unlike the sender, knows the intended recipient's location—that is familiar in the economic sphere and elsewhere. Carrying out such a method of organizing human activity is an abstract idea. *See, e.g.*, *Alice*, 573 U.S. at 220–21; *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (holding that "filtering [internet] content is an abstract idea because it is a longstanding, well-known method of organizing human behavior"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (holding that "tracking financial transactions to determine whether they exceed a pre-set spending limit" is an abstract idea that involves a method of organizing human activity); *see also Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017) ("[T]he claims embrace the abstract idea of using a marking affixed to the outside of a mail object to communicate information about the mail object, i.e., the sender, recipient, and contents of the mail object."); *NetSoc, LLC v. Match Group, LLC*, Nos. 20-1195, -1430, slip op. at 11 (Fed. Cir. Dec. 31, 2020) (claims to social network with privacy of message recipient protected held ineligible). And use of standard computers and networks to carry out those functions does not make the claims any less directed to an abstract idea. *See Alice*, 573 U.S. at 222–25;

*Customedia*, 951 F.3d at 1364; *Intellectual Ventures*, 792 F.3d at 1367.

Mr. Abel argues that the wherein clauses "solve a specific technical problem of physical and digital privacy" and "operate to narrow and limit the claim." Abel Opening Br. at 13. But "a claim is not patent eligible merely because it applies an abstract idea in a narrow way." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). Moreover, nothing about the evident problem of recipient privacy is specific to a particular computer regimen, and in any event, nothing in the claim points to a specific improvement in computers in their communications role. *See Secured Mail Solutions*, 873 F.3d at 910 ("No special rules or details of the computers, databases, printers, or scanners are recited."); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292–94 (Fed. Cir. 2020) (reciting precedents requiring particularity of computer improvement). As the Board correctly concluded, the computer and database limitations of claim 1 merely implement an abstract idea on a computer. *See Ex parte Abel*, 2020 WL 969176, at *5.

Mr. Abel also argues that the Board did not follow the United States Patent and Trademark Office's 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019). Abel Opening Br. at 19–22. In fact, the Board walked through the steps of that Guidance. *Ex parte Abel*, 2020 WL 969176, at *3–6. We need not further address the Guidance, which does not bind us. *In re Rudy*, 956 F.3d 1379, 1382 (Fed. Cir. 2020). We conclude that governing precedent, directly applied, establishes that the claims at issue are directed to abstract ideas.

## B

The claims do not pass muster under the second step of the *Alice* framework because they do not set forth an inventive concept that would transform their subject matter into something more than the abstract idea. The abstract idea itself encompasses most of what is found in claim 1.

What remains is merely implementation on conventional computers. *See Alice*, 573 U.S. at 226 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). As noted, nothing in the claims at issue here recites a particular improvement in how computers carry out the basic functions relevant to implementing the abstract idea. In this respect, these claims are similar to other claims we have held to flunk the *Alice* test. *See, e.g., Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) (claims directed to abstract idea of "organizing information through mathematical correlations" with recitation of only generic gathering and processing activities); *Intellectual Ventures*, 792 F.3d at 1367–69 (Fed. Cir. 2015) (claims adding generic computer components to financial budgeting); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using conventional computer activities); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying an exchange of advertising for copyrighted content to the internet); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims adding generic computer functionality to the formation of guaranteed contractual relationships).

Mr. Abel suggests that the Board's reversal of the examiner's obviousness rejections undermine the ineligibility conclusion under § 101. Abel Opening Br. at 17. We reject this suggestion, even putting aside the fact that the Board's obviousness ruling was only that the examiner had not provided "reasoning sufficient to support the conclusion of obviousness." *Ex parte Abel*, 2020 WL 969176, at *6. We have held that satisfying the requirement of non-obviousness does not imply eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be non-obvious may still be abstract. *See Chamberlain Group,*

*Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348–49 (Fed. Cir. 2019); *SAP America*, 898 F.3d at 1163 (noting that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103").

## III

For the foregoing reasons, we affirm the Board's conclusion that claims 1–3 of the '873 application claim ineligible subject matter.

## AFFIRMED