NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ENCO SYSTEMS, INC.,**
*Plaintiff-Appellant*

**v.**

**DAVINCIA, LLC,**
*Defendant-Appellee*

---

2020-1995

---

Appeal from the United States District Court for the Eastern District of Missouri in No. 1:19-cv-00039-SNLJ, Judge Stephen N. Limbaugh, Jr.

---

Decided: March 8, 2021

---

BRAD SMITH, Endurance Law Group PLC, Jackson, MI, for plaintiff-appellant. Also represented by MATTHEW L. CUTLER, Harness, Dickey & Pierce, P.L.C, St. Louis, MO; JAMES BRADLEY LUCHSINGER, Troy, MI.

DENNIS J. ABDELNOUR, Honigman LLP, Chicago, IL, for defendant-appellee. Also represented by J. MICHAEL HUGET, Ann Arbor, MI.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge*.

ENCO Systems, Inc. owns U.S. Patent No. 7,047,191, titled "Method and System for Providing Automated Captioning for AV Signals." ENCO sued DaVincia, LLC in the United States District Court for the Eastern District of Missouri, alleging that DaVincia infringed the '191 patent. The district court held that the '191 patent claims are invalid under 35 U.S.C. § 101. *ENCO Systems, Inc. v. DaVincia, LLC*, 447 F. Supp. 3d 916 (E.D. Mo. 2020). We affirm.

I

A

The '191 patent describes an audio-visual (AV) captioning system and method "using a speech-to-text processing system and associating the caption data with the AV signal." '191 patent, col. 2, lines 17–23. Offering a solution to what it describes as costly and error-prone human transcription, the '191 patent's system includes several components that work in concert to present captioned text accurately. *Id.*, col. 3, lines 11–52. The '191 patent explains that incoming audio can be separated from the whole of a video camera's AV signal and processed by a speech-to-text processing system, which converts an audio signal into text using "conventional speech-to-text software." *Id.*, col. 3, line 53 through col. 4, line 23. Thereafter, an encoder processes the received text "to produce a captioned AV signal by associating the text data with the original AV signal," *id.*, col. 4, lines 37–45, before that captioned AV signal is sent to a display device for presentation to a user, *id.*, col. 5, line 62 through col. 6, line 2. *See also id.*, col. 6, line 16 through col. 7, line 26 (describing Fig. 2). At least one embodiment of the '191 patent includes an "autoflush counter" as part of the speech-to-text processor that sets "[discrete] time intervals" by which the system

will process portions of an AV signal. *Id.*, col. 8, lines 13–21.

Claim 1 of the '191 patent recites:

1. A method for providing captioning in an AV signal, the method comprising:

selecting a number of lines of caption data which can be displayed at one time;

determining a type of a caption encoder being used with a speech-to-text processing system;

retrieving settings for the speech-to-text processing system to communicate with the caption encoder based on the identification of the caption encoder;

automatically identifying a voice and speech pattern in an audio signal from a plurality of voice and speech patterns with the speech-to-text processing system;

training the speech-to-text processing system to learn one or more new words in the audio signal;

directly translating the audio signal in the AV signal to caption data automatically with the speech-to-text processing system, wherein the direct translation is adjusted by the speech-to-text processing system based on the training and the identification of the voice and speech pattern;

associating the caption data with the AV signal at a time substantially corresponding with the converted audio signal in the AV signal from which the caption data was directly translated with the speech-to-text processing system, wherein the associating further comprises synchronizing the caption data with one or more cues in the AV signal; and

> displaying the AV signal with the caption data at
> the time substantially corresponding with the con-
> verted audio signal in the AV signal, wherein the
> number of lines of caption data which is displayed
> is based on the selection.

*Id.*, col. 10, lines 18–50. The '191 patent includes twenty-one claims in total; among them are independent apparatus claims 8 and 15, whose limitations are similar to those of method claim 1. *See id.*, col. 11, lines 8–35; *id.*, col. 12, lines 1–35.

B

ENCO sued DaVincia on March 7, 2019, in the Eastern District of Missouri for infringement of the '191 patent. On May 13, 2019, DaVincia filed a motion to dismiss under Rule 12(b)(6), arguing in relevant part that the '191 patent claimed patent-ineligible subject matter under 35 U.S.C. § 101. Applying the framework of *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the district court first determined that the claims are directed to the abstract idea of automated stenography processes implemented on a computer. *ENCO*, 447 F. Supp. 3d at 921–22. The district court explained that the claims "suffer[] from the same high-level generalities and broad-form functional terminology" that this court rejected as ineligible under § 101 in *University of Florida Research Foundation, Inc. v. General Electric Co.*, 916 F.3d 1363 (Fed. Cir. 2019). *ENCO*, 447 F. Supp. 3d at 922. The district court then determined that the claims do not include an "inventive concept" beyond the abstract idea because they rely on "self-described conventional computer components" arranged for functional purposes without a "particularized and concrete" configuration. *Id.* at 922–23. Based on those determinations, the court dismissed ENCO's case with prejudice. *Id.* at 923. The court subsequently denied ENCO's motion for reconsideration and request for leave to amend its complaint. *See ENCO Systems, Inc. v. DaVincia,*

*LLC*, No. 1:19-cv-00039, 2020 WL 2129680, at *2 (E.D. Mo. May 5, 2020).

ENCO timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

On appeal, ENCO argues that the claims of the '191 patent are not directed to an abstract idea and, in any event, include inventive concepts. We disagree.

We review a district court's dismissal for failure to state a claim under the law of the regional circuit, which here requires that we review the district court's dismissal de novo and take all facts alleged in the complaint as true. *See Univ. of Fla.*, 916 F.3d at 1367; *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). Subject-matter eligibility under § 101 is a question of law based on underlying facts. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (internal quotation marks omitted). "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the

particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP America*, 898 F.3d at 1166–67 (internal quotation marks omitted).

## A

Under the first step of the *Alice* framework, we consider "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). In this case, claim 1, together with the specification, makes clear that the focus of the claimed advance is simply the abstract idea of automating the AV-captioning process. That process, consisting of converting audio to text and associating the text with corresponding video, is not itself asserted to be an advance over the prior art. The focus is not any specific improved computer techniques for performing those functions—functions intrinsic to the concept of AV captioning—but simply the use of computers to "conserve human resources" by automating work otherwise performed through human labor. *Univ. of Fla.*, 916 F.3d at 1367.[1]

"'[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364

---

[1]    Although ENCO contends on appeal that claim 1 is not representative, *see* ENCO Opening Br. 11, it provided no separate argument regarding dependent claims 3, 7, 10, 13, 14, and 21 (requiring "timers," "counters," and time-related thresholds) in the district court and therefore forfeited such argument. We therefore treat claim 1 as representative. *See Affinity Labs*, 838 F.3d at 1256 n.1.

(Fed. Cir. 2020) (quoting *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 70 (Fed. Cir. 2015)). In *University of Florida*, we held claims focused just on replacing "pen and paper methodologies" with "data synthesis technology"—without a focus on specific, assertedly improved processing techniques—to be directed to an abstract idea. 916 F.3d at 1367. The same focus is evident here, not just from the non-specific nature of the claim language, but from the specification. *See* '191 patent, col. 1, lines 24–56 (in describing the asserted advance, focusing on the fact that in prior-art systems, "captions are either typed-in from a script or are typed in real-time by stenographers" or "an individual listens to a recorded audio signal and manually inputs the caption information as text in a computer"). The advance is only at the abstract level of computerization because claim 1 fails to set forth specific techniques for processing the data, instead reciting known computer techniques for automation of known processes. *See Univ. of Fla.*, 916 F.3d at 1368; *see also In re Mohapatra*, No. 2020–1935, 2021 WL 408755, at *3 (Fed. Cir. Feb. 5, 2021) ("[T]his court has frequently looked to whether the claims are sufficiently concrete or specific to be directed to a patent-eligible process rather than a patent-ineligible result."); *cf. McRO, Inc. v. Banda Namco Games America Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (finding claims not to be directed to an abstract idea where claims were "limited to rules with specific characteristics" and "set out meaningful requirements for the first set of rules" for the creation of better animation images, as confirmed by the specification (internal quotation marks omitted)).

ENCO suggests that the Patent and Trademark Office's recently designated "informative" decision, *Ex parte Hannun*, No. 2018-003323, 2019 WL 7407450 (P.T.A.B. Apr. 1, 2019) (previously captioned *Ex parte Linden*), requires a finding that the '191 patent claims are not focused on abstract subject matter. ENCO Opening Br. 29–31. We

disagree. We are not bound by internally precedential decisions of the Patent Trial and Appeal Board that seek to follow this court's precedents, which we apply directly. *See In re Rudy*, 956 F.3d 1379, 1383 (Fed. Cir. 2020). In any event, the Board in *Hannun* ruled patent eligible claims that recited automatic speech-recognition methods that were "directed to a specific implementation" of processing data by measuring tailored parameters identified within audio files. *Hannun*, 2020 WL 7407450, at *5. No such specificity exists here. We conclude that the claims of the '191 patent are directed to an abstract idea.

B

The claims also fail under the second step of the *Alice* framework because they do not set forth an inventive concept that would transform their subject matter into something more than the abstract idea.

The claims do not incorporate anything more beyond conventional computing hardware and software, which do not transform the subject matter into an eligible application of the abstract idea. The specification, with respect to each part of the system, including the audio-to-text conversion, explains that "conventional" components and techniques can be used. *See, e.g.*, '191 patent, col. 3, lines 53–56; *id.*, col. 4, lines 17–20; *id.*, col. 4, lines 37–41; *id.*, col. 5, lines 13–16; *id.*, col. 9, line 67 through col. 10, line 5.[2] No factual issues preclude deciding § 101 eligibility in this case under Rule 12(b)(6). *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to

---

[2] Even the "training" required by claim 1 is described in the specification by reference to the available "Dragon" speech-to-text software. *See* '191 patent, Fig. 3; *id.*, col. 3, lines 53–56; *id.*, col. 7, lines 31–40.

judicial notice or by exhibit,' such as the claims and the patent specification." (citation omitted)).  Understood in light of the specification, representative claim 1 of the '191 patent requires nothing more than "off-the-shelf, conventional computer . . . and display technology for gathering, sending, and presenting the desired information."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

ENCO also argues that the Board's decision not to institute DaVincia's parallel petition for an inter partes review on obviousness grounds undermines our conclusion. *See* ENCO Opening Br. 34; ENCO Reply Br. 19–20.  It does not.  We have explained that satisfying the requirements of non-obviousness does not imply eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be non-obvious can still be abstract.  *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348–49 (Fed. Cir. 2019); *SAP America*, 898 F.3d at 1163.

We have considered ENCO's remaining arguments and find them unpersuasive.

## III

For the foregoing reasons, we affirm the district court's grant of DaVincia's motion to dismiss.

## **AFFIRMED**