NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MOVE, INC., NATIONAL ASSOCIATION OF REALTORS,**
AND **NATIONAL ASSOCIATION OF HOME BUILDERS**
*Plaintiffs/Counterclaim Defendants-Appellees,*

AND

**RE/MAX INTERNATIONAL, INC., ADVANCED ACCESS, ENEIGHBORHOODS, LLC, BRAD KORB, CHRISTY MORRISON, ORANGE COUNTY MULTIPLE LISTING SERVICE, INC. (DOING BUSINESS AS SOUTHERN CALIFORNIA MLS), KELLER WILLIAMS REALTY, INC., NORCAL GOLD, INC. (DOING BUSINESS AS RE/MAX GOLD, INC.), GEORGIA MLS, INC., METROLIST SERVICES, INC., DELAWARE VALLEY REAL ESTATE INFORMATION NETWORK, INC. (DOING BUSINESS AS TREND), RAPATTONI CORPORATION, BIRDVIEW.COM, INC. (DOING BUSINESS AS BIRDVIEW TECHNOLOGIES), DELTA MEDIA GROUP, INC., FRANK HOWARD ALLEN REALTORS, ALAIN PINEL REALTORS, INC., PULTE HOMES, INC., THE RYLAND GROUP, INC., SHEA HOMES, TAYLOR MORRISON, INC. (FORMERLY KNOWN AS TAYLOR WOODROW, INC.), AVALONBAY COMMUNITIES, INC., ESSEX PROPERTY TRUST INC., BRE PROPERTIES, INC., RIVERSTONE RESIDENTIAL GROUP, LLC, THE**

**FIRST AMERICAN CORPORATION, FIDELITY NATIONAL REAL ESTATE SOLUTIONS, LLC, IHOMEFINDER, INC., CIS DATA SYSTEMS, INC., DIVERSE SOLUTIONS, LLC, TREND SOFTWARE, INC. (DOING BUSINESS AS PROPERTYMINDER), PAYMON GHAFOURI, NATIONAL ASSOCIATION OF NEW HOME BUILDERS, AND WANISOFT CORPORATION,**
*Counterclaim Defendants,*

v.

**REAL ESTATE ALLIANCE LTD.,**
*Defendant/Counterclaimant-Appellant,*

AND

**EQUIAS TECHNOLOGY DEVELOPMENT LLC,**
*Defendant/Counterclaimant.*

---------------

2010-1236

---------------

Appeal from the United States District Court for the Central District of California in case No. 07-CV-2185, Judge George H. King.

---------------

Decided: March 22, 2011

---------------

ROBIN L. MCGRATH, Alston & Bird LLP, of Atlanta, Georgia, argued for plaintiffs/counterclaim defendants-appellees. With her on the brief was FRANK G. SMITH, III.

LOUIS M. SOLOMON, Cadwalader, Wickersham & Taft LLP, of New York, New York, argued for defen-

dant/counterclaimant-appellant. With him on the brief were CHRISTOPHER A. HUGHES, COLIN A. UNDERWOOD, TONY V. PEZZANO, MICHAEL P. DOUGHERTY and REBEKKA C. NOLL.

_____

Before GAJARSA, LINN, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Appellant Real Estate Alliance Ltd. (REAL) appeals the district court's judgment that Move, Inc. et al. (Move) do not infringe claim 1 of REAL's U.S. Patent No. 5,032,989 (the '989 patent). We conclude that the district court erred in its claim construction, and *vacate and remand* for further proceedings.

## BACKGROUND

Move filed suit seeking declaratory judgment that REAL's U.S. Patent No. 4,870,576 (the '576 patent) and its continuation in part, the '989 patent, are invalid and not infringed. REAL counterclaimed, asserting that Move infringed both patents. After full briefing, the district court issued its claim construction order. The parties subsequently stipulated to noninfringement based on the court's claim construction, and the court entered judgment. REAL appeals with respect to claim 1 of the '989 patent only, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review claim construction *de novo.* *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. *See*

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The '989 patent describes a system with a graphical user interface for finding available real estate properties. Claim 1 recites:

A method using a computer for locating available real estate properties comprising the steps of:

a) creating a database of the available real estate properties;

b) displaying a map of a desired geographic area;

c) selecting a first area having boundaries within the geographic area;

d) zooming in on the first area of the displayed map to about the boundaries of the first area to display a higher level of detail than the displayed map;

e) displaying the zoomed first area;

f) selecting a second area having boundaries within the zoomed first area;

g) displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property; and

h) identifying available real estate properties within the database which are located within the second area.

Each of the disputed claim terms are discussed in turn below.

## I.  Step (a) – Creating a Database

The district court construed step (a), "creating a database of the available real estate properties," to mean:

creating the structure that houses data relating to available real estate properties that are maintained and arranged for ease and speed of search and retrieval by a computer, such structure including the tables, the fields in each table, and with relational databases, the relationships between the fields and tables. Creating a database is to be distinguished from uploading data to, inserting data in, adding data to, modifying data within or providing data to an existing database.

J.A. 16. The district court's construction thus encompasses creating only the structure or schema of the database, i.e., creating an empty database with a defined structure.

The court acknowledged that the plain language of the claim, creating a database "of" properties, rather than "for" properties, implies that the database is populated with properties when it is created. The court reasoned, however, that "the database is not populated by the inventor, but rather by third-party users, who wish to sell a property." J.A. 15. The court further noted that the claimed database is "dynamic and not fixed," and concluded that "the database is not 'created' anew each time the database is updated with a new property listing file." *Id.* The court further stated that it was "not sure what the inventor could possibly have patented beyond the structure and the schema that permits this dynamic process of database population and maintenance to occur." J.A. 16.

On appeal, REAL argues, and we agree, that the plain language of the claim precludes the district court's construction. The claim recites creating a database *of* available properties. Thus, the database must be populated with at least two properties upon creation. These avail-

able properties are first mentioned in the preamble, and they are displayed in step (g) and identified in step (h). Moreover, dependent claims 7-11 require that "the database . . . created in step (a)" includes available residential properties, commercial properties, and rental properties. Accordingly, we conclude that the result of the creating step is a database populated with available properties.

REAL also argues that the district court's construction improperly limits "database" to databases having tables and fields, and that the term database is broad enough to encompass a sequential list database with no tables or fields—e.g., a flat file. We agree. Nothing in the specification limits the term database to any particular type of database. "Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004). Nothing before us indicates that the inventor disavowed any particular database implementation. Accordingly, we conclude that step (a) means creating a database containing data representing two or more available real estate properties.

## II.  Steps (c), (f) – Selecting an Area

The district court construed step (c), "selecting a first area having boundaries . . ." to mean a user "choosing a geographic area of interest by causing a boundary to be superimposed over the displayed map using the first area selection cursor." J.A. 16. According to the district court, to practice the claimed invention, the user manipulates the resizable first area selection cursor to enclose the area to be selected. For example, the '989 patent at FIG. 3A, col.1 ll.49-68, and col.9 ll.37-56 describes the user moving and resizing a resizable rectangular "window box" or "rubberband" on the map to define an area before zooming

in on that selected area. The district court similarly construed step (f), "selecting a second area having boundaries . . . ," to mean "choosing a search area by causing a boundary to be superimposed over the displayed map using the second area selection cursor." J.A. 16. An example may be seen at FIG. 3B, illustrating a user positioning a rubberband circle to define the second area. '989 patent, col.9 ll.57-65.

Thus, the district court's construction limits these selecting steps to a user defining and selecting an area using a resizable selection tool. The district court stated that its construction was "in keeping with the meaning [it] gave these terms" when construing the parent '576 patent. J.A. 6, 8. The terms construed for the '576 patent, however, included "selecting a landmark" and "first area selection cursor," which are not recited in this claim.

### 1.   Selecting an Area Does Not Require Defining the Area

REAL argues that the district court's construction read limitations into the claims which are not present in these claims – incorrectly requiring the user to define the area using an area selection cursor or rubberband. Move argues that the district court properly construed these steps, but concedes, as it must, that the area selection cursor limitation is not present in this claim. Move's position is that "selecting" encompasses causing a boundary to be superimposed over the map (with an unspecified tool) because the "'claims cannot be of broader scope than the invention that is set forth in the specification.'" Appellee's Br. 32 (quoting *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006)).

REAL argues that the boundaries of the selected area do not have to be created in any specific manner, i.e., they are not limited to a user superimposing visual boundaries

over a displayed map. REAL further asserts that the district court improperly imported these limitations from the '576 claims, which recite using the selection cursors to define the selected areas, into the claim at issue which does not have any such limitations. We agree.

In our view, defining an area is different than choosing a particular area once it has been defined. The plain language of the claim requires only the choosing of a particular area having boundaries. The claim language, "selecting a first area having boundaries," does not require that the user create the boundaries. The claim only requires that the user select an area with boundaries. And it certainly does not require that the user utilize any particular tool (such as a selection cursor or rubberband) to create boundaries. Claim 1 of the '989 patent does not contain the same "first area selection cursor" limitation as the claims of the '576 patent and it was incorrect for the district court to import it into this claim. There is nothing in the specification that clearly disavows selecting an existing area with boundaries. In the absence of such a disavowal, we will not narrow the claims.

Move argues that the prosecution history supports a narrower construction of selecting because the inventor characterized the prior art as lacking the selection of pre-existing geographic "bounded areas" such as a city or county. Contrary to Move's characterization, we do not read the prosecution history to limit the claimed invention in this manner. The inventor characterized the prior art as discussing selection of pre-existing subregions, but not disclosing the selection of first and second bounded areas where the second is within the first. J.A. 1007-08. Move also argues that the inventor did not dispute the examiner's characterization of the invention as allowing the operator to designate an area by drawing a border around it on a display. This characterization, however,

does not amount to a clear disavowal of selecting an existing area as Move argues. The characterization was not made by REAL, nor did it acquiesce in the examiner's characterization. J.A. 998-99, 1007-09. Finally, Move's arguments relating to the prosecution of the '576 patent do not amount to a clear disavowal of claim scope for claim 1 of the '989 patent. While statements made during prosecution of a parent can certainly limit a later application, we conclude that the statements cited by Move in the '576 prosecution pertained to very different patent claims with different limitations. Claim 1 of the '989 patent does not contain the first area selection cursor limitation of the '576 and the '576 claims do not recite selecting an area. We conclude that the prosecution history cited by Move does not clearly disavow selecting an existing area. Accordingly, we conclude that selecting an area having boundaries does not require defining the boundaries.

### 2. A User or a Computer May Select an Area

The district court held that the "selecting" step must be performed by a human user, not a computer. The district court based its construction of the selecting steps at issue on appeal on its construction of a "selecting a landmark" step from a '576 patent claim. REAL argues that the selecting steps on appeal may be performed by a computer. REAL asserts that because the preamble recites "[a] method using a computer for locating available real estate properties," the claimed steps are performed by the computer. REAL also notes that nowhere in the claim is a human user mentioned. Move responds that a human user is implicit in a claim reciting a method using a computer.

The plain meaning of selecting does not foreclose automated selection, as both users and computers may select or choose. We see nothing in the selecting step that

requires the selecting be done exclusively by human users or computers. While the preamble may well limit the claim, in that it requires use of a computer to locate available real estate properties, this preamble limitation does not require that every claim step be performed exclusively by a computer. Further, the specification does not clearly disavow automated selection. To the extent that REAL argues that the selection of an area takes place when the computer sets the world coordinates equal to the boundaries of a selection cursor or rubberband window box, we do not agree. Selection takes place when the user or a computer chooses an area having boundaries, not when the computer updates certain display variables to reflect the selected area.

### III. Step (d) – Zooming

The district court construed step (d), "zooming in on the first area of the displayed map to about the boundaries of the first area to display a higher level of detail than the displayed map" to mean:

> causing the computer to display closer up and with more detail perceptible only the area enclosed by the actual boundaries of the first area selection cursor, or an area largely, but not exactly equal to the area enclosed by the actual boundaries of the first area selection cursor, so that the display appears to have zoomed down closer to earth.

J.A. 16. In construing step (d), the district court characterized the step as being equivalent to a disputed phrase from the '576 patent, "[z]ooming said displayed map to substantially coincide with the boundaries of said cursor, thereby displaying a higher level of detail," and assigned a similar definition. J.A. 13-14, 16.

First, we agree with REAL that the district court erred by importing the first area selection cursor expressly recited in the '576 patent claim into its construction of this claim. REAL also asserts that, because the district court's construction of a similar zooming step in the '576 patent excludes "the mere use of optical magnification," J.A. 12, the zooming step in this claim should have a similar exclusion. Move responds that the district court construction already requires more detail to be perceptible, thus the express exclusion proposed by REAL is unnecessary.

This step recites "zooming . . . to display a higher level of detail." Thus, this step expressly requires more detail to be displayed. According to the plain language of this claim, mere magnification is not enough as it would not "display a higher level of detail." Moreover, during prosecution of the '576 patent, the inventor distinguished a similar zooming step from a prior art analog projection system that optically magnifies static map slides. According to the inventor, the prior art optical magnification system "fails to provide a greater level of detail." J.A. 10. We conclude that the zooming step requires the computer to enlarge and display with more detail than was displayed in step b) an area equal to or approximately equal to the first area.

IV.  Step (g) – Displaying Points

Step (g) recites "displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property." The '989 patent also describes a procedure for creating and updating real estate property data wherein a user pinpoints the specific geographic location of the property using a crosshair cursor. '989 patent col.4 ll.52-61. The district court

reasoned that the results of this procedure limit where each point is displayed in step (g), and construed the phase "appropriate geographic location" as:

> the location within the displayed second area identified by the creator of the property listing file using a movable crosshair cursor to pinpoint the location, which was intended to correspond to the actual physical location of the available real estate property on the Earth's surface.

J.A. 17. In other words, the court limited the "appropriate geographic location" to a location previously pinpointed by a user in a particular manner.

On appeal, REAL argues that the district court improperly imported this pinpointing limitation into the claimed displaying step. Move argues that because the disclosed create and update procedure must be used to create all listing files searchable by users of the claimed invention, the points must be displayed at the user-pinpointed location.

We agree with REAL that the pinpointing limitation should not be imported into the definition of an appropriate geographic location. The claim recites no such limitation. Furthermore, the specification gives us no reason to conclude that every listing in the claimed database must be entered by this create and update procedure. Even using this procedure, users need not perform each and every step. *See, e.g.*, '989 patent col.4 l.55 (cross-hair cursor "allows," but does not require, user to pinpoint location). Even assuming arguendo that only listings entered by performing each step of the create and update procedure are displayed, the appropriate location could also be, for example, determined from the address that was entered during the procedure. *Id.* col.4 ll.59-61.

The parties also disagree whether the appropriate geographic location corresponds to the actual or approximate physical location of the available real estate property.  The inventor added step (g) in its entirety to overcome cited art, explaining that the points were each displayed "at the approximate geographic location of available real estate property."  J.A. 1009.  Accordingly, we conclude that the "appropriate geographic location" broadly means the approximate geographic location of an available property as stored in the database.

The district court also construed "displaying" step (g) as being restricted to displaying on a computer monitor, as opposed to using a printer.  REAL argues that the district court's construction should apply only to the '576 patent.  Move responds that, in the parties' joint claim construction brief, they agreed that their arguments with respect to displaying applied equally to both patents.  We conclude that the displaying must occur on a computer monitor and not a printer.  When read in conjunction with the other claim steps, it is clear that the displaying must occur on the monitor so that the display can be manipulated.  The claim also recites "zooming in on [an area] of the displayed map."  Such zooming cannot be performed on a printed map.  Accordingly, we agree with the district court the displaying must occur on the monitor.

CONCLUSION

For the forgoing reasons, we vacate the district court's judgment of noninfringement and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED**

COSTS

Costs are awarded to REAL.