NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MOVE, INC., NATIONAL ASSOCIATION OF REALTORS, NATIONAL ASSOCIATION OF HOME BUILDERS,**
*Plaintiffs/Counterclaim Defendants-Appellees*

**RE/MAX INTERNATIONAL, INC., ADVANCED ACCESS, NORCAL GOLD, INC., DBA RE/MAX GOLD, INC., BRAD KORB, ENEIGHBORHOODS, LLC, CHRISTY MORRISON, ORANGE COUNTY MULTIPLE LISTING SERVICE, INC., DBA SOUTHERN CALIFORNIA MLS, METROPOLITAN MULTI-LIST, INC., DBA GEORGIA MLS, INC., METROLIST SERVICES, INC., DELAWARE VALLEY REAL ESTATE INFORMATION NETWORK, INC., DBA TREND, RAPATTONI CORPORATION, BIRDVIEW.COM, INC., DBA BIRDVIEW TECHNOLOGIES, DELTA MEDIA GROUP, INC., PULTE HOMES, INC., THE RYLAND GROUP, INC., SHEA HOMES, TAYLOR MORRISON, INC., FKA TAYLOR WOODROW, INC.,**
*Counterclaim Defendants-Appellees*

**KELLER WILLIAMS REALTY, INC., FRANK HOWARD ALLEN REALTORS, ALAIN PINEL REALTORS, INC., PAYMON GHAFOURI, NATIONAL ASSOCIATION OF NEW HOME BUILDERS, AVALONBAY COMMUNITIES, INC., ESSEX PROPERTY TRUST INC., BRE PROPERTIES, INC., RIVERSTONE RESIDENTIAL GROUP, LLC, FIRST AMERICAN CORPORATION,**

**FIDELITY NATIONAL REAL ESTATE SOLUTIONS, LLC, IHOMEFINDER, INC., CIS DATA SYSTEMS, INC., DIVERSE SOLUTIONS, LLC, WANISOFT CORPORATION,**
*Counterclaim Defendants*

**v.**

**REAL ESTATE ALLIANCE LTD.,**
*Defendant/Counterclaimant-Appellant*

**EQUIAS TECHNOLOGY DEVELOPMENT LLC,**
*Defendant/Counterclaimant*

————————————

2017-1463

————————————

Appeal from the United States District Court for the Central District of California in Nos. 2:07-cv-02185-GHK-AJW, 2:08-cv-01657-GHK-AJW, Judge George H. King.

————————————

Decided: February 1, 2018

————————————

ROBIN L. MCGRATH, Duane Morris LLP, Atlanta, GA, argued for plaintiffs/counterclaim defendants-appellees. Also represented by WESLEY ACHEY, FRANK G. SMITH, III, Alston & Bird LLP, Atlanta, GA.

HENRIK D. PARKER, Baker & Hostetler LLP, Philadelphia, PA, argued for all counterclaim defendants-appellees. Counterclaim defendants-appellees RE/MAX International, Inc., Advanced Access, Brad Korb, eNeighborhoods, LLC, Christy Morrison, Orange County Multiple Listing Service, Inc. also represented by STEVEN J. ROCCI.

LAWRENCE HUSICK, Lipton, Weinberger & Husick, Southeastern, PA, argued for defendant/counterclaimant-appellant.

JEFFREY B. BOVE, Ratner Prestia, Wilmington, DE, for counterclaim defendants-appellees Norcal Gold, Inc., Metropolitan Multi-List, Inc., Metrolist Services, Inc., Delaware Valley Real Estate Information Network, Inc., Rapattoni Corporation, Birdview.com, Inc., Delta Media Group, Inc.

DARIUS C. GAMBINO, DLA Piper US LLP, Philadelphia, PA, for counterclaim defendants-appellees Pulte Homes, Inc., The Ryland Group, Inc., Shea Homes, Taylor Morrison, Inc.

————————————

Before LOURIE, WALLACH, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

This appeal marks the fourth installment in a decades-long litigation saga between the parties. Real Estate Alliance Ltd. ("REAL"), owner of U.S. Patent Nos. 5,032,989 and 4,870,576, appeals the district court's summary judgment holding the '989 patent invalid for claiming ineligible subject matter and summary judgment holding that REAL waived its claims of divided infringement for the '989 patent. REAL also challenges the district court's judgment invalidating the '576 patent based on the district court's analysis of the '989 patent and the parties' representations in a Joint Status Report. Because we agree that the '989 patent claims ineligible subject matter, we need not decide whether REAL waived its claims of divided infringement. We also detect no error in the district court's invalidation of the '576 patent. Accordingly, we affirm.

BACKGROUND

The '989 patent is a continuation-in-part of the '576 patent[1] and relates generally to a method of searching for real estate properties geographically on a computer. According to the '989 patent, a user begins the search by identifying a geographic region of interest for acquiring property and then selecting an inner area within this geographic region by "designat[ing] boundaries on a map displayed on [the] screen." '989 patent, Abstract. The selected area is then "zoomed in on and a second area is selected within the zoomed region." *Id.* The zoom feature permits users to "change the world coordinate display" such that the "size of the viewport remains constant" and the "display now appears to have zoomed down closer to earth." *Id.* at col. 2 ll. 1–4, col. 9 ll. 52–57. The resulting "[m]ap boundary lines are displayed with greater detail," i.e., not just as a magnified view of the original map. *Id.* at col. 2 ll. 4–10. The selected area "is then cross-referenced with the database of available properties whose approximate locations are then pictorially displayed on screen." *Id.*, Abstract.

Claim 1 of the '989 patent recites this improvement:

1. A method using a computer for locating available real estate properties comprising the steps of:

a) creating a database of the available real estate properties;

b) displaying a map of a desired geographic area;

c) selecting a first area having boundaries within the geographic area;

---

[1]    Both the '989 and '576 patents were filed in the 1980s and have since expired.

d) zooming in on the first area of the displayed map to about the boundaries of the first area to display a higher level of detail than the displayed map;

e) displaying the zoomed first area;

f) selecting a second area having boundaries within the zoomed first area;

g) displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property; and

h) identifying available real estate properties within the database which are located within the second area.

*Id.* at col. 15 l. 33 – col. 16 l. 3.

Before we address the issues in the current appeal, a brief overview of the litigation history is needed. This action commenced in 2007 when Move, Inc. filed suit against REAL in the U.S. District Court for the Central District of California seeking a declaratory judgment that the '989 and '576 patents were invalid and not infringed by Move's websites. REAL subsequently sued the National Association of Realtors ("NAR"), the National Association of Home Builders ("NAHB"), and a number of real estate brokers, agents, multiple listing services, home builders, and rental property owners and managers for infringing the '989 and '576 patents. REAL's complaint asserted infringement by the Move websites and by each defendant's own website.

The district court entered a case management order dividing the litigation into two phases. Phase 1 of the litigation would resolve REAL's infringement claims against Move, NAR, and NAHB regarding Move's websites, as well as any issues relating to the validity or

enforceability of the '989 and '576 patents. Phase 2 would address REAL's infringement claims against the remaining defendants ("the Secondary Defendants") based on their individual websites, i.e., non-Move websites, and any liability issues if the Move websites were found to infringe in Phase 1. REAL's claims against the Secondary Defendants were stayed during Phase 1, and the Secondary Defendants agreed to be bound by any validity, enforceability, or claim construction determinations made in Phase 1, as well as any finding that a Move website infringed the '989 or '576 patents. The district court then consolidated the two cases into a single docket.

Phase 1 of the litigation proceeded as contemplated by the case management order. The district court issued a claim construction order in 2009 addressing claim construction disputes in both patents. Based on the district court's constructions, REAL stipulated to noninfringement of both patents and appealed. Its appeal, however, only addressed the '989 patent. Because the district court erred in construing the claims of the '989 patent, we vacated and remanded for further proceedings consistent with our opinion. *See Move, Inc. v. Real Estate All. Ltd.*, 413 F. App'x 280, 282 (Fed. Cir. 2011). On remand, Move sought summary judgment of noninfringement of the '989 patent. The district court granted Move's motion in a 2012 opinion because it concluded that Move was not liable for direct or joint infringement of the '989 patent. REAL appealed and the case was twice remanded to the district court given changes in the law of divided infringement.

This brings us to the subject of REAL's current appeal. On remand, Move sought summary judgment that REAL waived its divided infringement claims. Based on REAL's previous litigation positions in this case, the district court granted Move's motion. *See Move, Inc. v. Real Estate All. Ltd.*, No. CV 07-2185, 2016 WL 9080238, at *2–4 (C.D. Cal. Apr. 25, 2016).

In a subsequent motion, Move sought summary judgment that the '989 patent was invalid under 35 U.S.C. § 101. The district court granted this motion as well. *Move, Inc. v. Real Estate All. Ltd.*, 221 F. Supp. 3d 1149 (C.D. Cal. 2016) ("*Eligibility SJ Op.*") (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)). Under *Alice* step one, the court held that the claims of the '989 patent were directed to the abstract idea of "collecting and organizing information about available real estate properties and displaying this information on a digital map that can be manipulated by the user." *Id.* at 1162. The district court determined under *Alice* step two that the claims lacked an inventive concept because nothing in the claim limitations or their ordered combination transformed the abstract idea into a patent-eligible application. *Id.* at 1164–65.

REAL appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We apply the law of the regional circuit when reviewing a district court's grant of summary judgment. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016). Summary judgment in the Ninth Circuit is appropriate when, after drawing all reasonable inferences in favor of the non-moving party, there remains no genuine issue of material fact precluding the grant of summary judgment. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011).

I.

Patent eligibility under § 101 is a question of law and may involve underlying questions of fact. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016). We review the district court's ultimate conclusion on eligibility de novo. *See Intellectual*

*Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). We look to the test articulated in *Alice* to determine whether a claim is eligible for patenting under § 101. *See* 134 S. Ct. at 2355. Pursuant to *Alice*'s two-part test, we decide first "whether the claims at issue are directed to" a patent-ineligible concept, namely a law of nature, natural phenomenon, or abstract idea. *Id.* at 2354–55. If the answer is yes, we then consider the claim elements, both individually and as an ordered combination, to determine whether they contain an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73, 78 (2012)).

A.

Under *Alice* step one, we agree with the district court that claim 1 of the '989 patent[2] is directed to the abstract idea of "a method for collecting and organizing information about available real estate properties and displaying this information on a digital map that can be manipulated by the user." *Eligibility SJ Op.*, 221 F. Supp. 3d at 1162. The step-one analysis requires us to consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Claim 1 is aspirational in nature and devoid of any implementation details or technical description that would permit us to conclude that the claim as a whole is directed to something other than the abstract idea identified by the district court.

---

[2]   REAL does not argue the patentability of the dependent claims separately. Accordingly, we treat claim 1, the only independent claim, as representative for purposes of this appeal.

While we do not suggest that every claim involving the collection, organization, manipulation, or display of data is necessarily directed to an abstract idea, claim 1 is not meaningfully distinct from claims we have held were directed to abstract ideas in previous cases. The claims in *Electric Power Group, LLC v. Alstom S.A.*, for example, recited a method for detecting events on an interconnected electric power grid by collecting information from various sources, analyzing this information to detect events in real time, and displaying the event analysis results and diagnoses. 830 F.3d 1350, 1351–52 (Fed. Cir. 2016). We concluded that the focus of these claims was on the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Id.* at 1353. Claim 1 of the '989 patent involves the same general steps of collecting, organizing, and presenting information.

We reached a similar result in *Intellectual Ventures I LLC*, where the claims recited systems and methods for preserving compatibility between XML documents after they had been edited by different users. 850 F.3d at 1339–40. According to the claims at issue in that case, a "dynamic document" containing data extracted from the original XML document would be created, users could edit the data displayed in the dynamic document, and the changes would then be "dynamically propagated" back into the original XML document. *Id.* at 1339. We concluded that these claims were, "at their core, directed to the abstract idea of collecting, displaying, and manipulating data." *Id.* at 1341; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345, 1347 (Fed. Cir. 2014) (concluding that claims covering a method for using a scanner to extract data from hard copy documents, recognizing specific information within the extracted data, and storing that information in memory were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain

data within the collected data set, and 3) storing that recognized data in a memory"). Based on these binding precedents, we conclude that claim 1 is directed to an abstract idea.

Our conclusion on *Alice* step one is further supported by the similarities between the '989 patent claims and other claims that "simply use computers to serve a conventional business purpose." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016); *see Alice*, 134 S. Ct. at 2356 (concluding that concept of intermediated settlement was "a fundamental economic practice long prevalent in our system of commerce" and thus an abstract idea). In *Affinity Labs*, for example, the claims covered a system for streaming regional broadcast signals to cell phones located outside the region. Although the claims required a network, storage medium, and the transmission and receipt of signals, we concluded that the claims were directed to the abstract idea of "providing out-of-region access to regional broadcast content." *Id.* at 1258 (explaining that the claims were not "directed to *how* to implement out-of-region broadcasting on a cellular telephone" and claimed the function itself instead of a particular way to perform the function).

Claim 1 of the '989 patent is no different. It broadly recites the commercial practice of "using a computer for locating available real estate properties." '989 patent col. 15 ll. 33–34; *see id.*, Abstract (describing patent as "a method for locating available real estate properties for sale"). While the claim limitations provide steps for using the computer to perform the search, they contain no technical details or explanation of how to implement the claimed abstract idea using the computer. Absent such a disclosure, we cannot conclude that claim 1 covers anything more than the use of a computer for a conventional business purpose. *See Affinity Labs*, 838 F.3d at 1261.

REAL attempts to distinguish its claims from those in *Alice* and its progeny by contending that the district court over-generalized the claim limitations. REAL focuses on two particular limitations as reciting technological advances: (1) creation of a database of the available real estate properties; and (2) zooming in on a selected geographic area. For support, REAL relies on testimony from its expert that databases at the time of the invention could not be queried graphically and that zooming on a computer-displayed map to depict a higher level of detail was neither routine nor conventional. *See* Appellant Br. 11–12 (citing J.A. 233, ¶¶ 11–12).

Setting aside the conclusory nature of REAL's expert declaration, the focus of claim 1 is not on any technological advancement but rather on the performance of an abstract idea "for which computers are invoked merely as a tool." *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Instead of focusing on the technical implementation details of the zooming functionality, for example, claim 1 recites nothing more than the result of the zoom. Such claims are drawn to an abstract idea because they "claim[] the function of [the abstract idea], not a particular way of performing that function." *Affinity Labs*, 838 F.3d at 1258 ("There is nothing in claim 1 that is directed to *how* to implement [the abstract idea]. Rather, the claim is drawn to the idea itself.").

Claim 1 is also distinguishable from the patent-eligible claims in cases such as *Enfish* and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). In those cases, the claims focused "on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Enfish*, 822 F.3d at 1336 (concluding claims were directed to a specific, improved type of self-referential table for storing tabular data); *see Visual Memory*, 867 F.3d at 1259 (determining claims were directed to improved computer memory system with programmable

operational characteristics). We also emphasized the specifications' disclosures regarding the improvements in computer functionality brought about by the claimed inventions. *See Enfish*, 822 F.3d 1333 (recognizing the claimed invention's enhanced flexibility in configuring the database, streamlined indexing technique, and more effective data storage); *Visual Memory*, 867 F.3d at 1259 (acknowledging that the claimed programmable operational characteristic enabled a memory system to be interoperable with multiple different processors and could outperform prior art memory systems with larger caches).

The same cannot be said here. Claim 1 focuses not on a technological improvement, but rather on a method of searching for real estate using a computer. *See* '989 patent col. 15 l. 35 – col. 16 l. 3 (reciting steps of creating a property database, displaying a geographic region on a map, iterative zooming to focus on a desired geographic region, and identifying properties within the database that fall within the selected geographic region). While the ideas of storing available real estate properties in a database and selecting and displaying a particular geographic area may well be improvements in the identification of available real estate properties, there is no evidence that these ideas are technological improvements. Indeed, REAL has not cited any convincing evidence in the specification that the claimed invention improves the functioning of the computer itself.

## B.

Under the second step of the *Alice* analysis, we examine the claim limitations "more microscopically," *Electric Power*, 830 F.3d at 1354, to determine whether they contain "additional features" constituting an "inventive concept," *Alice*, 134 S. Ct. at 2357. "This requires more than simply stating an abstract idea while adding the words 'apply it' or 'apply it with a computer.'" *Versata*

*Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2358).

Our analysis uncovers no inventive concept in the individual claim limitations or their ordered combination. Claim 1 recites only generic computer components and features: a "computer" and the creation of a "database." '989 patent col. 15 ll. 33–37. But claims directed to an abstract idea that "merely require generic computer implementation[] fail to transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357. The specification confirms this conclusion by explaining that "the present invention may be implemented on an IBM or compatible personal computer system." '989 patent col. 15 ll. 12–14.

REAL's counterargument that the claimed zoom feature supplies the inventive concept is not persuasive for reasons similar to those we articulated under *Alice* step one.[3] For support, REAL again relies on its expert's conclusory declaration:

> It was considered neither routine nor conventional in the mid-1980s for a computer-displayed map to be able to zoom to display a higher level of detail in the sense of displaying information that wasn't present at the lower level of detail at all, and this zooming step cannot be performed by a human.

---

[3] REAL also contends that the "nature of the database" and "display of appropriate property locations on the map" provide the "something more," but it never develops these arguments. Appellant Br. 17. REAL analogizes its claimed database to *Enfish*'s data tables without any supporting analysis and fails to explain how the display of appropriate property locations is an inventive concept. Neither argument is compelling.

J.A. 233, ¶ 12.   The declaration provides no citations to support this assertion and contains no additional rationale.

This bald assertion does not satisfy the inventive concept requirement.   Where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it," we have concluded that the claims do not satisfy *Alice*'s second step.   *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017); *see also Affinity Labs*, 838 F.3d at 1263 (concluding that claims were ineligible under *Alice* step two where the allegedly inventive concept was not the "essential advance," was only described functionally,  and where there was "no further specification of a particular technology for" accomplishing the allegedly inventive concept).   Further, the claim language does not explain what is inventive about the zoom feature or explain how it is accomplished.   REAL also has not pointed us to any portion of the specification that fills this gap.   Indeed, the specification's teaching that the invention can be performed using a generic "IBM or compatible personal computer system," '989 patent col. 15 ll. 12–14, and the failure to provide any implementation details for the zoom feature suggests that the zoom feature utilizes only existing computer capabilities.   This leads us to conclude that the claimed zoom feature is nothing more than an instruction to apply an abstract idea using a computer. *See Versata*, 793 F.3d at 1332; *see also Alice*, 134 S. Ct. at 2358 ("[I]f a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." (quoting *Mayo*, 566 U.S. at 84) (internal citations omitted)).

Our conclusion regarding the '989 patent's eligibility renders moot the issue of divided infringement because a party cannot be liable for infringing an invalid patent.

*See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015).

## II.

REAL also alleges that the district court erred by invalidating the '576 patent sua sponte without giving the parties notice or a reasonable time to respond. Our review of the record reveals instead that REAL expressly conceded the invalidity of the '576 patent. We see no error by the district court under these unique circumstances.

At the conclusion of its summary judgment opinion invalidating the '989 patent under § 101, the district court issued an order, questioning the validity of the related '576 patent and soliciting input from all parties in Phase 1 and Phase 2 of the litigation:

> While the parties have not squarely addressed the question whether the '576 Patent is invalid under 35 U.S.C. § 101, it appears—though we do not decide—that *our ruling with respect to the '989 Patent may invalidate the '576 Patent as well.* Accordingly, *all parties—including those identified as Secondary Defendants* in our September 25, 2015 Case Management Order (Doc. 125)— **SHALL** file a joint status report within fourteen days hereof, stating their views on *whether this order effectively resolves this action as to all parties* and whether judgment should be entered accordingly.

*Eligibility SJ Op.*, 221 F. Supp. 3d at 1174 (italic emphases added). The district court's order placed the '576 patent's validity at issue and required the parties to identify any outstanding issues in the litigation.

In response, all the parties to the litigation, including the Secondary Defendants, filed a Joint Status Report. The parties' Joint Status Report indicated that the dis-

trict court's eligibility and waiver opinions resolved all issues in the case with respect to all parties:

> [T]he Parties are all in agreement that the Court's Order [invalidating the '989 patent], in addition to its Order of April 25, 2016 holding that REAL has waived its right to proceed on a theory of divided direct infringement under § 271(a), *effectively resolves all issues to this action, including all issues related to REAL's claims against the Secondary Defendants. . . .* Accordingly, the Parties jointly request that the Court enter Judgment of Non-Infringement and Invalidity in favor of Plaintiffs Move, Inc., National Association of Realtors, National Association of Homebuilders, *and all Secondary Defendants*.

J.A. 930 (emphases added). Relying on the parties' representation that its orders had "resolve[d] all issues in this case," the district court "adjudged that Plaintiffs and Secondary Defendants are entitled to judgment that the '576 Patent and the '989 Patent are invalid and not infringed." J.A. 2.

The only fair reading of the Joint Status Report is that no issues remained in the case. The district court made its view clear: the ruling invalidating the '989 patent "appear[ed]" to invalidate the '576 patent and might have resolved the litigation in its entirety. *Eligibility SJ Op.*, 221 F. Supp. 3d at 1174. When asked to respond, REAL not only declined to make any arguments to support the validity of the '576 patent, but went even further by agreeing that the district court's rulings had resolved "all issues," including those "relat[ing] to REAL's claims against the Secondary Defendants." J.A. 930. Thus, REAL conceded the invalidity of the '576 patent.

REAL's attempt to rationalize its concession lacks merit. According to REAL, the phrase "this action" in the district court's directive to identify "whether this order

effectively resolves this action as to all parties," *Eligibility SJ Op.*, 221 F. Supp. 3d at 1174, only referred to Phase 1 of the litigation, not Phase 2. Therefore, REAL claims, its allegations of infringement of the '576 patent against the Secondary Defendants in Phase 2 of the litigation were not affected by the Joint Status Report.

We disagree. As an initial matter, the district court consolidated the cases giving rise to Phase 1 and Phase 2 of the litigation, meaning both phases were part of the same case or "action." By referring to "this action," the district court was referring to both Phase 1 and Phase 2. The district court's directive also sought input from the Secondary Defendants—parties who were not litigating the issues in Phase 1—which should have served as another indicator that the parties needed to identify any outstanding issues in either phase of the litigation. The validity of the '576 patent was one potential issue that remained in both phases, yet REAL never raised it. When read in context, we do not agree with REAL that the district court's directive seeking input from the parties in both phases regarding a patent that was at issue in both phases nonetheless referred only to Phase 1. Therefore, we conclude that REAL has conceded the invalidity of the '576 patent.

## CONCLUSION

We have considered REAL's remaining arguments and find them unpersuasive. The district court did not err in holding the claims of the '989 patent ineligible under § 101. Because there can be no liability for infringing an invalid patent, we do not reach the issue of waiver for REAL's divided infringement claims. We also detect no error in the district court's judgment invalidating the '576 patent. We affirm.

**AFFIRMED**

COSTS

Costs to Appellees.